The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on April 5, 2019, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: April 5, 2019**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JOAO TEIXEIRA, | ) | Case No. 17-15280 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |

MEMORANDUM OF OPINION[1]

On June 21, 2018, the Court approved, over the debtor's objection, the Chapter 7 trustee's proposed sale of the debtor's purported interest in a trust that includes what might be a sixteenth century oil painting by Caravaggio. On February 1, 2019, the debtor filed a motion in which he asserts that newly discovered evidence provides sufficient grounds to set aside the sale of the debtor's interest in the trust under Bankruptcy Rule 9024 and Rule 60(b)(2) of the Federal

---

[1] This Opinion is not intended for official publication.

Rules of Civil Procedure. For the reasons that follow, the debtor's motion is denied.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N), and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 157(a) and 1334 and Local General Order 2012-7, entered by the United States District Court for the Northern District of Ohio.

## BACKGROUND AND PROCEDURAL HISTORY

Unless otherwise indicated, the following facts are undisputed. On September 6, 2017, the debtor, Joao Teixeira, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In Schedule B of the debtor's petition, the debtor answered "no" in response to the question that asks whether the debtor has an interest in any "trusts, equitable or future interests in property . . . and rights or powers exercisable to your benefit" (Docket No. 1 at 13). In addition, the debtor answered "no" in response to the question that asks whether the debtor has an interest in any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment" (Docket No. 1 at 13). In the Statement of Financial Affairs, the debtor answered "no" to the question that asks, "[w]ithin 1

year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?" (Docket No. 1 at 35).

Pursuant to 11 U.S.C. § 701, the U.S. Trustee appointed David O. Simon to serve as the Chapter 7 trustee for the debtor's case. On September 18, 2017, the U.S. Trustee sent the Chapter 7 trustee information regarding the debtor's potential interest in a trust (Docket No. 52). The corpus of the trust is a sixteenth century oil painting sometimes attributed to the painter Michelangelo Merisi de Caravaggio (the "Caravaggio Trust"). For almost two decades, the Caravaggio Trust has been subject to pending litigation in the Circuit Court of the Seventh Judicial Circuit in Volusia County, Florida. *See In re Caravaggio Trust*, Case No. 2001-30696-CICI-32; *Joao Teixeira-Nascimiento, et al. v. Martin C. Boire P.A., et al.*, Case No. 2013-31477-CICI-32 (collectively, the "Florida litigation"). After receiving information about the Caravaggio Trust and related Florida litigation from the U.S. Trustee, the Chapter 7 trustee sent correspondence to Cesar J. Dominguez, the debtor's attorney in the Florida litigation, on September 20, 2017, requesting confirmation that the debtor was in fact a party to the Florida litigation (Docket No. 52, Exhibit A). Attorney Dominguez never responded to this inquiry.

On October 12, 2017, the Chapter 7 trustee held the § 341 meeting of creditors. During the meeting, the trustee asked the debtor about the Caravaggio

3

Trust and related Florida litigation. According to the transcript of the 341 meeting, the debtor made the following statements in response to the Chapter 7 trustee's questions about the Caravaggio Trust and the Florida litigation:

> **Trustee:** And what's [attorney] Dominguez trying to do for you?
>
> **Defendant:** Dominguez right now, I had to hire him in order to see what's going to happen, because the [Florida] Trustee ended up suing the Trust, sold the property and took all the money for himself. So we had to end up getting some kind of representation. As of right now the Courts in Volusia County have said that it belongs to the [Florida] Trustee, but the attorney that we got is still litigating it. But as far as we know, he took all the money and the Court hasn't said anything other it's all his.
>
> **Trustee:** And why didn't you tell your [bankruptcy] lawyer about all this?
>
> **Defendant:** Because I've never had any—any even wanting on that, because as far as I know there is nothing there.
>
> **Trustee:** I mean, they're talking about big numbers like $14 million, $300,000, $9,106,000 and you have no idea what this is all about?
>
> **Defendant:** Like I said, the [Florida] Trustee took all of that.
>
> **Trustee:** Okay.
>
> **Defendant:** There's nothing for me in there, other than my name stuck on that thing.
>
> **Trustee:** Well—
>
> **Defendant:** I hate that I even got involved. It belonged to my dad and my dad doesn't speak English and he got me involved with that, and that's why my name is really attached to that.
>
> **Trustee:** So are you saying you didn't even have claims to this property?

4

17-15280-aih    Doc 90    FILED 04/05/19    ENTERED 04/08/19 08:34:31    Page 4 of 17

> **Defendant:** Oh, as far as my name is in there, my father said I could have 25 percent if I helped him out, but there's nothing I can do. The [Florida] Trustee took everything.

(Docket No. 52, Exhibit B).

On December 13, 2017, the debtor received a discharge (Docket No. 11). On December 27, 2017, the Chapter 7 trustee filed a Report of No Distribution (Docket No. 13). On January 2, 2018, a final decree was entered, and the case was closed (Docket No. 14).

On March 2, 2018, the Chapter 7 trustee received a telephone call from Patrick S. Scott ("attorney Scott"), the attorney for Martin C. Boire ("Mr. Boire"), the trustee for the Caravaggio Trust (Docket No. 55). Following this conversation, and at attorney Scott's request, the Chapter 7 trustee sent a letter directly to Mr. Boire. In this letter, the Chapter 7 trustee introduced himself to Mr. Boire, explained how he came to learn about the debtor's potential interest in the Caravaggio Trust, and indicated that he was "very interested in finding a buyer for whatever interest the Debtor really owns" (Docket No. 44, Exhibit 1). According to the Chapter 7 trustee, this letter was later used by attorney Scott in a show cause proceeding before the Seventh Judicial Circuit in Volusia County, Florida, concerning a default judgment in favor of Mr. Boire against the debtor for fees and sanctions (Docket No. 55).

5

On March 29, 2018, the Chapter 7 trustee received an email from a Florida attorney named Thomas J. Jerla ("attorney Jerla"), stating that his firm's client, a Florida limited liability company called TAMSEF I, LLC, was willing to purchase the debtor's interest for $10,000 (Docket No. 55). On March 31, 2018, the Chapter 7 trustee moved to reopen the case, indicating that he had determined "there is a potential asset to administer for the benefit of creditors, consisting of the debtor's prepetition unscheduled potential interest in an entity known as the Caravaggio Trust" (Docket No. 15). After withdrawing his report of no distribution, the Chapter 7 trustee filed a notice of intent to sell the debtor's alleged interest in the Caravaggio Trust to TAMSEF I, LLC pursuant to § 363(b) of the Bankruptcy Code (Docket No. 25). The debtor's then bankruptcy attorney filed an objection on June 8, 2018, indicating that the Caravaggio Trust was previously sold in 2012 for over $15 million and then again for $40 million shortly after, but both buyers later defaulted on their loans (Docket No. 27). According to the debtor, a judgment was then entered in favor of the Caravaggio Trust for $18,283,884 after the first buyer's default, demonstrating that the Chapter 7 trustee's proposed sale was "against sound business reason" (Docket No. 27). The debtor's attorney also noted that the debtor's interest in the Caravaggio Trust is

6

currently "encumbered by a $753,825.53 default judgment and two writs of execution for fees and sanctions held by [Mr. Boire]" (Docket No. 27).

On June 19, 2018, the Court held a hearing on the Chapter 7 trustee's notice to sell and the debtor's objection. During the hearing, the debtor's bankruptcy attorney indicated that a third party, such as one of the debtor's family members, might be willing to offer more than $10,000 for the debtor's interest, but not significantly more. On June 21, 2018, the Court approved the proposed sale and overruled the debtor's objection (Docket No. 30). The debtor's interest in the Caravaggio Trust was and remained an unscheduled asset of the debtor's estate until it was sold by the Chapter 7 trustee.

On August 15, 2018, the debtor moved for his attorney in the Florida litigation, Cesar J. Dominguez, to appear *pro hac vice* and be substituted for the debtor's bankruptcy attorney in this case (Docket Nos. 33 and 37). After the Court granted this substitution of counsel over the objection of the Chapter 7 trustee, the debtor filed a motion to vacate the Court's June 19, 2018, order granting the trustee's motion to sell ("first motion to vacate") (Docket No. 44). In the first motion to vacate, the debtor asserted that the Chapter 7 trustee's intent to sell the debtor's interest for $10,000 was "the perfect example of what the Courts would consider a sales price so 'grossly inadequate' as to shock the conscience of the

7

court," and suggested that the debtor would be able to find a buyer willing to offer a much higher purchase price (Docket No. 44). Both the Chapter 7 trustee and the U.S. Trustee filed objections to the debtor's motion, in which they defended the reasonableness of the sale and asserted that the debtor lacked standing to challenge the sale because he failed to disclose his interest on his schedules and during the 341 meeting (Docket Nos. 52 and 55).

On October 16, 2018, the Court held a hearing on the debtor's first motion to vacate. Following oral argument by the debtor's attorney, the Chapter 7 trustee, and an attorney for the U.S. Trustee, an agreement was reached under which the debtor would have three weeks—until November 6, 2018—to have someone tender $100,000 to the Chapter 7 trustee. If someone tendered this amount by November 6, 2018, then the $100,000 would be used as the opening bid at an auction selling the debtor's interest in the Caravaggio Trust. But if no one tendered this amount by November 6, 2018, the first motion to vacate would be denied. On November 6, 2018, the trustee reported to the Court that no one had tendered the $100,000, and the Court denied the debtor's first motion to vacate on November 7, 2018 (Docket No. 56).

Following the Court's ruling, the debtor filed, then later withdrew, a motion to reconsider the Court's order denying the debtor's first motion to vacate

8

(Docket Nos. 63 and 72). On February 1, 2019, the debtor filed a second motion to vacate the Court's June 21, 2018, order (Docket No. 73). On February 19, 2019, Mr. Boire responded to the debtor's motion (Docket No. 76). On February 21, 2019, both the Chapter 7 trustee and the U.S. Trustee filed objections (Docket Nos. 78 and 79). On February 22, 2019, TAMSEF I, LLC also filed an objection (Docket No. 80). The debtor filed replies to all four responses (Docket Nos. 82, 84, 85, 86), and briefing is now complete.

## DISCUSSION

Federal Rule of Civil Procedure 60, made applicable to bankruptcy proceedings by Bankruptcy Rule 9024, states in pertinent part:

> (b) **Ground for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); . . .

Fed. R. Civ. P. 60(b)(2). To succeed on a Rule 60(b)(2) motion, the movant must demonstrate that "(1) it exercised due diligence in obtaining the information and (2) the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment." *JPMorgan Chase Bank, NA v. First Am. Title Ins. Co.*, 750 F.3d 573, 584-85 (6th Cir. 2014) (citing

9

*HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) and quoting *Good v. Ohio Edison Co.*, 149 F.3d 413 (6th Cir. 1998)). The debtor has the burden of proving his entitlement to relief under Rule 60(b)(2) by clear and convincing evidence. *Id.* (citing *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008)).

In support of his second motion to vacate, the debtor asserts that attorney Dominguez received a package from Mr. Boire on December 22, 2018. This package included (1) accounting and trust disclosure documents from Mr. Boire, (2) billing statements from Mr. Boire from November 2, 2017, through November 2, 2018, and (3) billing statements from attorney Scott from March 2018 through October 2018. The debtor argues that these documents

> provided Attorney Dominguez newly discovered evidence, that the Boire Trustee, and its counsel . . . colluded with TAMSEF and the Chapter 7 Trustee, from initial contact between the parties, to the preparation of documents to effectuate the bad-faith sale of Debtor's personal property to TAMSEF, and throughout the litigation that ensued to vacate the [sale of the debtor's interest].

(Docket No. 73). In his motion, the debtor asserts that he "could not have obtained these memos prior to the granting of the TAMSEF Sale Order, working with the utmost due diligence because the Debtor did not know, and could not have known, these memos existed until [Mr. Boire] made the mistake of sending them to Attorney Dominguez" (Docket No. 73). The debtor also asserts that if he had

10

gained possession of these various billing statements and disclosure documents from Mr. Boire and attorney Scott prior to the hearing on October 16, 2018, he would not have entered into the agreement with the Chapter 7 trustee that led to the denial of the debtor's first motion to vacate on November 7, 2018.

According to the debtor, the new evidence presented by these documents supports his contention that the sale of the debtor's interest in the Caravaggio Trust pursuant to § 363(b) of the Bankruptcy Code should not have been authorized. Section 363(b) permits a bankruptcy trustee to "sell . . . property of the estate" after notice and hearing. Once a bankruptcy court authorizes the sale, § 363(m) states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). The Sixth Circuit has noted that numerous circuits have construed § 363(m) as creating a *per se* rule that automatically moots appeals for failure to obtain a stay of the sale at issue. *See Parker v. Goodman (In re Parker)*, 499 F.3d 616, 621 (6th Cir. 2007) (citing cases from numerous circuits, including the First, Second, Fifth, Eleventh, and D.C. Circuits).

In this case, the debtor did not appeal the Court's order approving the sale on June 21, 2018. The debtor did not file a notice of appeal within fourteen days of

11

the order as provided by Bankruptcy Rule 8002, nor did the debtor move for a stay pending appeal as provided by Bankruptcy Rule 8007. Instead, the debtor filed a motion for relief from the Court's order pursuant to Civil Rule 60(b) and Bankruptcy Rule 9024. While § 363(m) applies to a direct appeal of a court's authorization of a sale, the debtor argues that "the underpinnings of good faith" reflected in § 363(m) similarly apply when a party challenges a sale by a motion to vacate. Here, the debtor's principal argument is that the billing statements of Mr. Boire and attorney Scott show that TAMSEF I, LLC did not purchase the debtor's interest in the Caravaggio Trust in "good faith," providing sufficient grounds for relief under Civil Rule 60(b)(2).

The Sixth Circuit has adopted a traditional equitable definition of "good faith purchaser" as "one who purchases the assets for value, in good faith, and without notice of adverse claims." *See Made in Detroit, Inc. v. Official Comm. of Unsecured Creditors (In re Made in Detroit, Inc.)*, 414 F.3d 576, 581 (6th Cir. 2005) (quoting *In Re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1197 (7th Cir. 1978). To show a lack of good faith, "the debtor must demonstrate that there was fraud or collusion between the purchaser and the seller or the other bidders, or that the purchaser's actions constituted 'an attempt to take grossly unfair advantage of other bidders.' " *See White v. Corcoran (In re White)*,

2017 WL 4804418 (6th Cir. 2017) (citing *255 Park Plaza Assocs. Ltd. P'ship v. Conn. Gen. Life Ins. Co. (In re 255 Park Plaza Assocs. Ltd. P'ship)*, 100 F.3d 1214, 1218 (6th Cir. 1996) and quoting *Onouli–Kona Land Co. v. Estate of Richards (In re Onouli–Kona Land Co.)*, 846 F.2d 1170, 1173 (9th Cir. 1988)). Here, the debtor argues that collusion occurred among the Chapter 7 trustee, Mr. Boire, attorney Scott, and attorney Jerla both during and after the sale of the debtor's interest in the Caravaggio Trust.

In support of his assertion of collusion, the debtor identifies numerous communications noted on the billing statements of both Mr. Boire and attorney Scott. The debtor specifically notes that the Chapter 7 trustee, Mr. Boire, and attorney Scott communicated nearly a month before the Chapter 7 trustee moved to reopen the debtor's bankruptcy case. Once the Chapter 7 trustee moved to reopen the debtor's bankruptcy case and prepared to sell the debtor's interest in the Caravaggio Trust, attorney Scott reviewed the Chapter 7 trustee's notice of intent before the Chapter 7 trustee filed it. After the debtor objected to the trustee's notice of intent to sell, attorney Scott then assisted the Chapter 7 trustee in preparing for the Court's hearing on June 19, 2018. Attorney Scott, Mr. Boire, and the Chapter 7 trustee also worked together to prepare and revise the assignment of sale that was sent to attorney Jerla, the attorney for TAMSEF I, LLC. When

13

attorney Dominguez moved to appear *pro hac vice* in the debtor's bankruptcy case, attorney Scott assisted the Chapter 7 trustee in preparing an objection. Finally, attorney Scott and Mr. Boire assisted the U.S. Trustee as he prepared to file an adversary proceeding against the debtor to revoke the debtor's discharge.

Based on these communications, the debtor reaches several conclusions. First, the debtor claims that the Chapter 7 trustee, attorney Scott, and Mr. Boire intended "to keep their collaborative efforts secret" while drafting the terms of sale of the debtor's interest in the Caravaggio Trust (Docket No. 73 at 24). Second, the debtor asserts that collusion is shown by the Chapter 7 trustee's apparent reliance on attorney Scott, not only while drafting the necessary sale and assignment documents, but also while preparing to respond to the debtor's objection to the notice of intent to sell (Docket No. 73 at 28). Third, the debtor asserts that collusion occurred during "collaborative efforts" by the Chapter 7 trustee, attorney Scott, and Mr. Boire to object to attorney Dominguez's motion to appear *pro hac vice*, specifically citing Mr. Boire's "vested interest" as an adversary to the debtor in the Florida litigation (Docket No. 73 at 31-32). The debtor also argues that the "secondary role" of attorney Jerla during the sales process demonstrates that TAMSEF I, LLC is either a "straw buyer" or "alter ego" of Mr. Boire (Docket No. 73 at 25). The debtor accuses Mr. Boire of secretly exercising control

over attorney Jerla and creating TAMSEF I, LLC to "gain access to the Debtor's 25% beneficial interest" and "sabotage the litigation of the beneficiaries of The Caravaggio Trust against [Mr. Boire] in two Florida cases" (Docket No. 73 at 33).

The Court rejects the debtor's assertion that these various communications would have produced a different result had they been presented to the Court before it approved the Chapter 7 trustee's proposed sale on June 21, 2018. The record reflects that the Chapter 7 trustee did nothing to prevent others from submitting competing bids to the $10,000 offer from TAMSEF I, LLC. The debtor and parties connected with the debtor were free to appear at the June 19, 2018, hearing with a better cash offer. But no one did. Nor did anyone appear at the June 19, 2018, hearing and ask for more time to submit a larger offer. Instead, the debtor's attorney simply argued that the debtor's interest was much more valuable than the $10,000 being offered, and indicated that there was the possibility of the debtor paying more than what was being offered, but not significantly more.

Nor is there anything surprising or untoward about the Chapter 7 trustee communicating with individuals connected with the Florida litigation about buying the debtor's interest in the Caravaggio Trust. This is not a situation where anyone could bid on a twenty-five percent interest in a painting that might be a Caravaggio. Rather, any purchaser would only be buying whatever interest the

15

debtor has in a trust that remains tied up in almost two decades of litigation with purported liens in the millions of dollars.  Presumably, only parties already entangled in that litigation would be seriously interested in purchasing whatever interest the debtor may have in the Caravaggio Trust.

The Chapter 7 trustee receives a commission based on the amount of money paid to creditors, *see* 11 U.S.C. § 326, and has a direct financial incentive to maximize the amount of money he can obtain from the sale of the debtor's assets.  Indeed, the Chapter 7 trustee demonstrated his willingness to having the Court vacate the completed sale to TAMSEF I, LLC at the hearing on October 16, 2018.

At the hearing on October 16, 2018, the Court asked attorney Dominguez whether he was aware of any buyers who might be willing to present higher offers for the debtor's interest.  Attorney Dominguez stated that he could easily find a buyer who would be willing to offer "$100,000 . . . $50,000."  Attorney Dominguez then expressed the debtor's desire to schedule an auction for the debtor's interest, with his new buyer's offer as the opening bid.  The Chapter 7 trustee also stated that he would "love the opportunity to sell the debtor's interest for more money."  The Chapter 7 trustee then requested a brief adjournment.  After the brief adjournment, the Chapter 7 trustee reported that he had reached an agreement with attorney Dominguez.  If, as attorney Dominguez represented,

16

someone could come up with $100,000 in three weeks, then the Chapter 7 trustee would ask the Court to vacate the earlier sale. The $100,000 would then be used as an opening bid for an auction. If the $100,000 was not tendered by November 6, 2018, then the first motion to vacate would be denied.

Accordingly, the Court rejects the debtor's contention that this newly discovered evidence provides sufficient grounds to set aside the sale of the debtor's interest in the Caravaggio Trust under Bankruptcy Rule 9024 and Rule 60(b)(2) of the Federal Rules of Civil Procedure. Nor does the Court find it necessary to address any other reasons for denying the second motion to vacate, such as mootness under § 363(m). To the extent that a reviewing court were to find this Court's own reasoning deficient, the reviewing court would remain free to "affirm on any grounds supported by the record." *See Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*, 906 F.3d 403, 408 (6th Cir. 2018).

## CONCLUSION

For the reasons stated above, the debtor's second motion to vacate the Court's June 21, 2018, order approving the trustee's sale of the debtor's interest in the Caravaggio Trust is denied.

IT IS SO ORDERED.

17